# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| **BETTY LOUISE KERSCHKE,** | : | |
| | : | |
| **Plaintiff,** | : | **CIVIL ACTION FILE NO.** |
| | : | **1:14-CV-03474-AJB** |
| **v.** | : | |
| | : | |
| **CAROLYN W. COLVIN,** | : | |
| ***Acting Commissioner Social*** | : | |
| ***Security Administration,*** | : | |
| | : | |
| **Defendant.** | : | |

## O R D E R   A N D   O P I N I O N[1]

Plaintiff Betty Louise Kerschke ("Plaintiff") brought this action pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Acting Commissioner of the Social Security Administration ("the Commissioner") denying her application for Disability Insurance Benefits

---

[1]     The parties have consented to the exercise of jurisdiction by the undersigned pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. [*See* Dkt. Entries dated 11/19/2014 and 11/20/2014]. Therefore, this Order constitutes a final Order of the Court.

AO 72A
(Rev.8/8
2)

("DIB") under the Social Security Act.[2]  For the reasons below, the undersigned **AFFIRMS** the final decision of the Commissioner.

## I.  PROCEDURAL HISTORY

Plaintiff filed an application for DIB on October 13, 2010, alleging disability commencing on June 26, 2006. [Record (hereinafter "R") 19].[3]  Plaintiff's application was denied initially and on reconsideration.  [*Id*.].  Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), and an evidentiary hearing was held on October 16, 2012.  [R37-62].  The ALJ issued a decision on April 4, 2013, finding that

---

[2]     Title II of the Social Security Act provides for federal Disability Insurance Benefits.   42 U.S.C. § 401 *et seq*.   Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq*., provides for Supplemental Security Income Benefits ("SSI") for the disabled.  Title XVI claims are not tied to the attainment of a particular period of insurance disability.  *Baxter v. Schweiker*, 538 F. Supp. 343, 350 (N.D. Ga. 1982). Otherwise, the relevant law and regulations governing the determination of disability under a claim for DIB are nearly identical to those governing the determination under a claim for SSI.  *Wind v. Barnhart*, 133 Fed. Appx. 684, 690 n.4 (11th Cir. June 2, 2005) (citing *McDaniel v. Bowen*, 800 F.2d 1026, 1031 n.4 (11th Cir. 1986)).   In general, the legal standards to be applied are the same regardless of whether a claimant seeks DIB, to establish a "period of disability," or to recover SSI, although different statutes and regulations apply to each type of claim. *See* 42 U.S.C. § 1383(c)(3) (establishing that the judicial provisions of 42 U.S.C. § 405(g) are fully applicable to claims for SSI). Therefore, to the extent that the Court cites to SSI cases, statutes, or regulations, they are equally applicable to Plaintiff's DIB claims.

[3]     The parties do not object to the ALJ's recitation of the procedural history. [*See* Docs. 10, 11].

AO 72A
(Rev.8/8
2)

Plaintiff was not disabled.  [R19-29].  Plaintiff sought review by the Appeals Council, and the Appeals Council denied Plaintiff's request for review on August 29, 2014, making the ALJ's decision the final decision of the Commissioner.  [R1-6].

Plaintiff then filed an action in this Court on October 29, 2014, seeking review of the Commissioner's decision.  [*See* Docs.1, 3].  The answer and transcript were filed on May 26, 2015.  [Docs. 6, 7].  On June 25, 2015, Plaintiff filed a brief in support of her petition for review of the Commissioner's decision, [Doc. 10], and on July 27, 2015, the Commissioner filed a response in support of the decision, [Doc. 11].  Plaintiff did not file a reply brief, nor did the parties request oral argument.  (*See* Dkt.).  The matter is now before the Court upon the administrative record and the parties' pleadings and briefs, and is accordingly ripe for review pursuant to 42 U.S.C. § 405(g).

## II.    STATEMENT OF FACTS

### A.    Background

Plaintiff was 40 years old on the alleged onset date of disability.  [See R59]. Plaintiff has at least a high school education, [R179], and past relevant work as a ward secretary, sales secretary, and a crating and moving (relocation) estimator.  [R28, 43, 59]. Plaintiff alleges disability due to low back pain, hypertension, obesity, depression,

3

chronic pain syndrome, shortness of breath, fatigue, and obstructive sleep apnea. [R40, 41-42].

**B.    Medical Records**

In February 2006, Plaintiff underwent a left L5-S1 microdiskectomy and then a second surgery in January 2007 for a bilateral transforaminal lumbar interbody fusion at L5-S1. [R333, 362]. In April 2007, Plaintiff saw Erik Bendiks, M.D., at Comprehensive Orthopedic Group. [R443]. Dr. Bendiks noted on physical examination that Plaintiff is able to ambulate without difficulty and she is neurologically intact in bilateral lower extremities. [*Id*.]. X-rays of the lumbar spine revealed the hardware and bone graft were in excellent position. [*Id*.]. Dr. Bendiks opined that Plaintiff was temporarily totally disabled and instructed her to remain out of work. [*Id*.].

Plaintiff went to the Atlanta Spine & Brain Rehabilitation for a follow up in May 2007 and was seen by Daniel A. Danyo, M.D. [R406]. Dr. Danyo noted that her medication was providing adequate relief, though she continued to have pain and numbness in the left S1 distribution on examination. [*Id*.]. Dr. Danyo diagnosed Plaintiff with lumbosacral neuritis and low back pain. [*Id*.].

4

Plaintiff returned to Dr. Bendiks in August 2007, during which Plaintiff rated her back pain to be a one or two out of ten. [R439]. Dr. Bendiks recommended aggressive narcotic taper. [*Id*.]. He also opined that Plaintiff could return to work in a light duty capacity with no lifting over ten to fifteen pounds, have an allowance for frequent sitting, and no driving for over 30 minutes at a time. [*Id*.].

In October 2007 Plaintiff saw Dr. Bendiks and complained of back pain, but reported that she had discontinued her narcotics and was only taking over-the-counter medicines. [R429]. In November 2007, Plaintiff returned to Dr. Bendiks for a functional capacity evaluation, in which Dr. Bendiks opined that Plaintiff could function at a sedentary work level and recommended that Plaintiff be under a permanent restriction of no driving for more than 20 minutes at a time due to pain. [R426]. Dr. Bendiks further recommended that Plaintiff continue with her home exercise program and initiate a home walking program. [*Id*.].

In April 2009, a consultative examination was performed. [R734-38].[4] Plaintiff was noted to have morbid obesity. [R734]. Plaintiff reported that she is unable to sit, walk, or stand for more than five or ten minutes; she cannot climb stairs; is unable to

---

[4] The ALJ and Plaintiff indicate that the examination was performed by Paul Walker, D.O., [R26; Doc. 10 at 5], however the examination report was signed by Peter Giglio, D.O. [R737].

lift anything from the floor; and cannot sweep or vacuum. [*Id*.]. However, Plaintiff was observed to be sitting comfortably, got in and out of the chair and up and off the table without difficulty, walked the hall without difficulty, and was able to don and doff her shoes without difficulty. [R735]. The doctor indicated that Plaintiff was able to demonstrate finger-to-nose, heel-to-knee, heel-to-toe walking, able to walk on heels and toes, able to squat and rise, unable to stoop, and unable to pick up objects from the floor with both hands. [R736]. Plaintiff also had normal range of motion for all extremities. [R736-37].

In May 2009, Plaintiff saw her primary care physician, Yacoba Hudson, M.D., for severe back pain in her upper back. [R739]. After an abnormality was revealed in her chest x-ray, Plaintiff went to the emergency room and it was noted that Plaintiff recently had a viral/respiratory infection. [R758]. Plaintiff was diagnosed with posttussive back pain and bronchitis. [R760].

In June 2009, Plaintiff began treatment with Alexander Kessler, M.D. [R806]. It was noted that Plaintiff had chronic back pain and normal range of motion in her joints. [R807].

Also in June 2009, Louise Wunsch, M.D., a consultant with the Disability Determination Services ("state agency") completed a Physical Residual Functional

Capacity ("RFC") form.  [R779-86].  Dr. Wunsch opined that Plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently; could stand or walk for six hours in a workday and sit for six hours in a workday; and could occasionally climb ramp/stairs and ladder/rope/scaffolds, balance, stoop, kneel, crouch, and crawl.  [R780-81].  As support, Dr. Wunsch referred to Plaintiff's surgery and the April 2009 consultative examination.  [R786].

State agency consultant Shelby Gennett, PhD., completed a Psychiatric Review Technique in June 2009.  [R787-99].  Dr. Gennett opined that Plaintiff had a medically determinable mental impairment of depression, however it was not severe as it was asymptomatic.  [R787, 790].  Dr. Gennett also found that Plaintiff had no limitations in activities of daily living; maintaining social functioning; or maintaining concentration, persistence or pace.  [R797].  As support, Dr. Gennett noted that Plaintiff did not report any mental health allegations; a treatment note from July 2008 noted that her depression was asymptomatic and her memory was intact; a treatment note from March 2009 indicated that Plaintiff attends church weekly, dines out weekly, and shops weekly; and a June 2009 letter from Cherokee Family Practice provided that there were no limitations secondary to mental.  [R799].

7

In March 2010, state agency consultant George Hughes, PhD., also completed a Psychiatric Review Technique and found Plaintiff's depressive disorder to be non-severe.  [R818, 821].  Dr. Hughes also found that Plaintiff had no limitations in activities of daily living or maintaining social functioning, but found that Plaintiff had mild limitations in maintaining concentration, persistence, or pace. [R828]. In support, Dr. Hughes referred to Plaintiff's self report that she talks on the phone, does crossword puzzles, has concentration issues secondary to pain, no problems with stress or change, follows written and spoken instructions, and has no attention issues.   [R830]. Dr. Hughes noted the increase in Plaintiff's medication in May and September 2009, however, Dr. Hughes also noted that in June 2009, Dr. Kessler reported no signs of depression or anxiety.  [*Id*.].

In May 2010, state agency consultant John Hassinger, M.D., completed a Physical RFC Assessment. [R832-39].  Like Dr. Wunsch, Dr. Hassinger opined that Plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently; could stand or walk for six hours in a workday and sit for six hours in a workday; and could occasionally climb ramp/stairs and ladder/rope/scaffolds, balance, stoop, kneel, crouch, and crawl. [R780-81].  As support, Dr. Hassinger referred to Plaintiff's emergency

8

room visit in May 2009 and Dr. Kessler's treatment notes from June and September 2009.  [R839].

In December 2010, Plaintiff had another physical consultative examination with Darrell Murray, M.D. [R841-48].  Plaintiff reported that she can care for herself, travel without difficulty, shop for groceries, clean home, do laundry, make the bed, prepare her own food, lift 30 pounds from the floor, and sort and handle papers and files and place files in a cabinet at or above waist level. [R842].  Dr. Murray noted that Plaintiff was able to arise from a sitting position easily and demonstrate, finger to nose, able to perform heel to toe walking, able to squat and rise, able to stoop, able to pick up objects from the floor with both hands and able to perform Rhomberg. [R842].  Plaintiff also had a normal range of motion in all extremities.   [R845-46].   For a functional assessment, Dr. Murray offered the following opinion:

> Claimant may sit up to 8 hours; stand walk up to 6 hours secondary to morbid obesity.  Claimant should be able to bend, kneel, crawl, stoop, and crouch occasionally due to [s]hortness of breath.  There are no limitations to reacting, handling, feeling or grasp.  Claimant should be able to push and pull without limitations.  I would expect Claimant to have no limitations in lifting with both hands.  There is no workplace, visual, or environmental limitations noted.  There is no need for any assistive devices.  Claimant does not have any obvious learning disability that could be limiting.

[R843-44].

9

In February 2011, state agency consultant Harold Sours, M.D., completed a Physical RFC Assessment. [R851-58]. Like Drs. Wunsch and Hassinger, Dr. Sours opined that Plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently, could stand or walk for six hours in a workday, and sit for six hours in a workday. [R852]. Dr. Sours, however, opined that Plaintiff could frequently climb ramp/stairs, balance, stoop, kneel, crouch, and crawl; but could only occasionally climb ladder/rope/scaffolds. [R853]. Dr. Sours also opined that Plaintiff should avoid concentrated exposure to hazards. [R855]. As support, Dr. Sours cited the April 2009 and December 2010 consultative examinations and a treatment note from March 2010 in which it was noted that Plaintiff had normal gait, normal motor strength, and normal exam of the lumbar spine. [R852]. Dr. Sours also referred to a treatment note from October 2010 in which it was noted that Plaintiff's back pain was worse, but had a normal exam. [*Id.*].

State agency consultant John Cooper, PhD., completed a Psychiatric Review Technique in February 2011. [R859-71]. Like Drs. Gennett and Hughes, Dr. Cooper found Plaintiff's depression to be non-severe. [R859, 862]. Dr. Cooper also found that Plaintiff has no limitations in activities of daily living; maintaining social functioning; or maintaining concentration, persistence or pace. [R869]. As support, Dr. Cooper

10

noted that there was no history of mental health treatment and referred to treatment notes from March and October 2010 in which it was noted that Plaintiff had normal mood and affect, and is able to perform activities of daily living.  [R871].

In March 2011, Plaintiff returned to Dr. Kessler for a six month follow-up. [R917].  Plaintiff's chief complaint was dysphagia with solids for past six months.[5] [*Id*.].  On neurological exam, Plaintiff had normal gait and normal strength bilaterally, however she had decreased light touch sensation in the lower extremities bilaterally. [R918].  She had normal mental status exam and normal musculoskeletal exam.  [*Id*.]. Dr. Kessler noted that Plaintiff's depression symptoms were well controlled with no side effects to medication.  [*Id*.].  Regarding Plaintiff's back pain, it was noted that Plaintiff has chronic back pain and radiculopathy and Dr. Kessler started Plaintiff on Vicodin.  [R918-19].  Dr. Kessler instructed Plaintiff to follow up in six months. [R919].

State agency consultant Allen Carter, PhD., completed a Psychiatric Review Technique in August 2011, also finding Plaintiff's depression to be non-severe.  [R930, 933].  Dr. Carter also found that Plaintiff did not have any limitations in activities of

---

[5]     Dysphagia  is  difficulty  swallowing.    Mayo  Clinic, http://www.mayoclinic.org/diseases-conditions/dysphagia/basics/definition/con-200 33444 (last visited 3/27/2016).

AO 72A
(Rev.8/8
2)

daily living or maintaining social functioning, but that Plaintiff had mild limitations in maintaining concentration, persistence, or pace. [R940]. As support, Dr. Carter cited to Plaintiff's March 2011 examination with Dr. Kessler. [R942].

Also in August 2011, state agency consultant Abraham Oyewo, M.D., completed a Physical RFC Assessment. [R944-51]. Like Drs. Wunsch, Hassinger, and Sours, Dr. Oyewo opined that Plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently, could stand or walk for six hours in a workday, and sit for six hours in a workday. [R945]. Dr. Oyewo, however, opined that Plaintiff could frequently climb ramp/stairs, balance, kneel, and crawl; but could only occasionally climb ladder/rope/scaffolds, stoop, and crouch. [R946]. Dr. Oyewo also opined that Plaintiff should avoid concentrated exposure to hazards. [R948]. As support, Dr. Oyewo cited normal examinations from March 2010, October 2010, and March 2011. [R951].

In September 2011, Plaintiff returned to Dr. Kessler for a six month follow-up. [R956]. Plaintiff's chief complaint was worsening back pain with radiation to lower extremities and associated numbness. [*Id.*]. On neurological exam, Plaintiff had normal gait and normal strength bilaterally, however she had decreased light touch sensation in the lower extremities bilaterally. [*Id.*]. She had a normal mental status

12

exam and normal musculoskeletal exam.  [R957].  Dr. Kessler started Plaintiff on new medication for her back and depression.  [R957-58].  Dr. Kessler also noted that Plaintiff had persistent depression and added supplemental medication to treat it. [R958].  Dr. Kessler instructed Plaintiff to follow up in two to three months.  [R959].

On follow up in November 2011, Plaintiff reported much improved depression after starting new medication with no side effects and no significant anxiety.  [R960]. Plaintiff also reported improvement of her back pain.  [*Id.*].  Neurological, mental status, and musculoskeletal exams were all normal.  [R960-61].  Dr. Kessler instructed Plaintiff to follow up in four to six months.  [R961].

Also in November 2011, Dr. Kessler completed a Physical Capacities Evaluation form. [R953].  Dr. Kessler opined that Plaintiff could only lift five pounds occasionally and one pound frequently; could sit for one hour in a workday and stand or walk for one hour in a workday; could occasionally be around environment problems; could rarely push/pull, perform gross manipulation, perform fine manipulation, reach, or operate motor vehicles; could never climb and balance, bend or stoop, or work with or around hazardous machinery; and would need to be absent from work more than four days per month.  [R953].  Dr. Kessler based his opinion on Plaintiff's severe chronic back pain and obesity.  [*Id.*].

13

Dr. Kessler also completed a Clinical Assessment of Pain form. [R954]. Dr. Kessler opined that Plaintiff's pain is present to such an extent as to be distracting to adequate performance of daily activities or work, Plaintiff has greatly increased pain to such a degree as to cause distraction from tasks or total abandonment of task, and the side effects from Plaintiff's medications can be expected to be severe and to limit effectiveness due to distraction in attention, drowsiness, etc. [*Id.*].

C.   **Evidentiary Hearing Testimony**

At the hearing, Plaintiff testified that she stopped working in June 2006 and was a relocation coordinator. [R43]. Plaintiff testified that she had surgeries on her back a couple months prior to when she stopped working. [R44]. She had an additional surgery in January 2007. [*Id.*]. Plaintiff testified that since that surgery, there was a lot of improvement but she is still in constant pain. [R45]. She testified that now, the pain is getting worse, not better. [*Id.*]. Her pain is a three-out-of-ten on average. [R53]. Plaintiff also testified that she has neuropathy in her feet which started a year and a half prior and is very painful. [R45-46].

Regarding her sleep apnea, Plaintiff testified that her doctors have advised a sleep study because of her snoring and headaches, which may be due to lack of oxygen. [R47]. Plaintiff testified that she gets bad headaches three or four times a week which

14

last most of the day.  [R47-48].  She stated that she does not take any medication for it as she already takes Advil for her back, six to eight pills daily, and her doctors have not prescribed any medication.  [R48].

Plaintiff testified that her depression began around the time of her back injury. [R49].  She stated that she cries a lot.  [*Id*.].  She is on medication which helps; however, it makes her sleepy.  [R55-56].  Her high blood pressure is also under control with medication.  [R56].

Plaintiff testified that she cooks, does dishes, and washes clothes, but does not do any vacuuming or cleaning because those activities are too painful.  [R48].  She cannot go shopping, but does go to the grocery store where she can only walk with the assistance of a cart.  [R51].  She goes to Kohl's because they have a wheelchair and her mom can push her around.  [*Id*.].  She mostly sits on her bed and watches television and sometimes she reads, but has a little bit of difficulty reading at times.  [*Id*.].  She can take care of her own personal care and grooming and sits in a chair in the shower. [R53].  She attends church every Sunday.  [R55].  She drives, but does not drive long due to pain when sitting.  [*Id*.].

Plaintiff testified that she can sit for about thirty minutes.  [R51].  She can only walk from the car to the door of a store.  [*Id*.].  She can only lift ten pounds, but also

15

has not tried to lift anything heavier. [R54]. She can go up and down the steps in front of her house. [*Id*.]. She is capable of bending over and picking things up. [R55].

The vocational expert ("VE") testified that Plaintiff's work as a ward secretary and sales secretary are classified as sedentary exertion and skilled, and her work as a crafting moving estimator is classified as light exertion and skilled. [R59].

The VE testified that a hypothetical person with Plaintiff's age, education and previous work experience, who could lift, stand and walk at the light exertional level; can occasionally climb ladders, ropes, and scaffolding; and occasionally stoop and crouch could perform all of Plaintiff's past relevant work. [R60].

The VE further testified that a hypothetical person with Plaintiff's age, education and previous work experience, who could lift five pounds occasionally, one pound frequently; sit, walk, or stand for one hour at a time each; could not do any climbing of ladders, ropes, scaffolding, or balancing; could not work around hazardous machinery; rarely – defined as one to five percent of an eight hour day – do pushing and pulling; could do fine manipulation; rarely do overhead reaching and rarely operate a motor vehicle; and could occasionally be exposed to respiratory irritants could not perform Plaintiff's past relevant work and there would be no jobs that Plaintiff could perform. [R60-61].

16

III.   **ALJ'S FINDINGS OF FACT**

The ALJ made the following findings of fact and conclusions of law:

1.   The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.

2.   The claimant did not engage in substantial gainful activity during the period from her alleged onset date of June 26, 2006 through her date last insured of December 31, 2011 (20 CFR 404.1571 *et seq.*).

. . .

3.   Through the date last insured, the claimant had the following severe impairments: dysphagia, obesity, status post microdisketectomy and spinal fusion at L5-S1, and tobacco dependency (20 CFR 404.1520(c)).

. . .

4.   Through the date last insured, the claimant does not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).

. . .

5.   After careful consideration of the entire record, I find that, through the date last insured, the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she could occasionally climb ladder, ropes or scaffolds. She can occasionally stoop and crouch.

17

. . .

6.   Through the date last insured, the claimant was capable of performing past relevant work as a ward secretary, secretary sales, crafting and moving estimator.  This work did not require the performance of work related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

. . .

7.   The claimant was not under a disability, as defined in the Social Security Act, at any time from June 26, 2006, the alleged onset date, through December 31, 2011, the date last insured (20 CFR 404.1520(f)).

[R21-29].

In support of the decision, the ALJ found that Plaintiff's hypertension, diabetes mellitus, and idiopathic leucosytosis are non-severe impairments as physical examination pertaining to these impairments have been within normal limits.  [R21]. The ALJ also found that Plaintiff's medically determinable mental impairments of depressive disorder and anxiety were non-severe as they did not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities.  [R22]. In making this determination, the ALJ found that Plaintiff has only mild limitations in activities of daily living; social functioning; and maintaining concentration, persistence or pace.  [*Id.*].

18

With regard to the RFC, the ALJ first discussed Plaintiff's hearing testimony. [R25]. The ALJ then discussed the medical evidence. [R25-28]. The ALJ noted that Plaintiff underwent a lumbar fusion in January 2007 and had a prior diskectomy. [R25]. She noted that Plaintiff reported that her depression was under good control. [*Id.*]. The ALJ discussed Plaintiff's pain management treatment at Atlanta Spine and Brain Rehabilitation. [*Id.*]. The ALJ noted that at her last visit in October 2007, Plaintiff reported that her medications were controlling her pain well and she was noted to have a normal gait, though she complained of mild pain in her lower extremities. [*Id.*].

The ALJ next discussed the treatment notes from Comprehensive Orthopedic Group. [*Id.*]. The ALJ noted that Plaintiff reported in October 2007 that physical therapy was helping her. [*Id.*]. The ALJ also discussed the November 2007 opinion that Plaintiff was only capable of performing sedentary work, she was limited to driving no more than 20 minutes at a time, and that she should continue home exercise and start a walking program. [*Id.*]. The ALJ next discussed the treatment at Cherokee Family Medical Center where Plaintiff denied feeling anxious, fearful thoughts, compulsive thoughts or behavior, irritable mood, manic episodes, feelings of guilt or worthlessness, restlessness or sluggishness, hallucinations, diminished interest or pleasure, panic

19

attacks, significant change in appetite, sleep disturbance, thoughts of death or suicide, fatigue or loss of energy, and poor concentration and indecisiveness.  [*Id.*].

Next, the ALJ discussed the April 2009 consultative examination with Dr. Walker.  [R26].  The ALJ noted that Dr. Walker observed Plaintiff sitting comfortably, getting in and out of the chair and up and off the table without difficulty, walking down the hall without difficulty, and able to don and doff her shoes without difficulty.  [*Id.*].  The ALJ also noted that Dr. Walker observed that Plaintiff was able to walk on heels and toes and able to squat and rise, but was unable to stoop or pick up objects from the floor with both hands.  [*Id.*].  The ALJ gave great weight to Dr. Walker's assessment as it was based on clinical signs and findings.  [*Id.*].

The ALJ discussed the May 2009 emergency rom visit in which Plaintiff was treated for back pain and an abnormal x-ray and was diagnosed with posttusive back pain.  [*Id.*].

The ALJ next discussed the treatment notes of Dr. Kessler.  [R26-27].  The ALJ noted that Plaintiff denied medication side effects.  [R26].  The ALJ also noted that Plaintiff had normal gait and motor strength, normal mood and affect, and normal exams of the cervical and lumbar spine.  [*Id.*].

20

Next, the ALJ discussed the December 2010 consultative examination with Dr. Murray. [R27]. The ALJ noted that Plaintiff reported that she could lift 30 pounds from the floor, sort and handle papers and files and can place files in a cabinet at or above waist level, and she was able to drive to the exam. [*Id.*]. The ALJ further noted that Plaintiff was able to rise from a sitting position easily, do heel-to-toe walking, squat and rise, stoop, pick up objects from the floor with both hands, and perform Rhomberg. [*Id.*]. The ALJ also noted Dr. Murray's opinion that Plaintiff could sit up to eight hours and stand and walk up to six hours; that she should be able to bend, kneel, crawl, stoop, and crouch occasionally; there were no limitations with pushing, pulling, or lifting with both hands; and no workplace, visual, or environmental limitations. [*Id.*]. The ALJ assigned some weight to the opinion to the extent it is consistent with the RFC. [*Id.*].

The ALJ then determined that Plaintiff was not fully credible. [*Id.*]. First, the ALJ discussed Plaintiff's activities in which Plaintiff indicated that she can travel without difficulty, shops for her own groceries, cleans her home, does her laundry, makes her bed, prepares her own food, has hobbies which include reading and doing crossword puzzles, attends church, goes out to eat once a week, has no problems with

personal care, and is able to drive short distances.  [*Id.*].  The ALJ found that these activities suggest that Plaintiff is not limited to the extent one would expect.  [*Id.*].

Second, the ALJ found the office visit notes provided numerous occasions where Plaintiff did not specify any particular complaint, which the ALJ found to contrast with her claim of ongoing symptoms since the alleged onset date.  [*Id.*].  The ALJ also noted that Plaintiff reported that medication helped control her pain, hypertension, and depression.  [R28].

The ALJ then discussed the November 2011 medical source statement from Dr. Kessler.  [*Id.*].  The ALJ accorded little weight to Dr. Kessler's opinions finding them to be inconsistent with the overall medical evidence of record including his own treatment notes.  [*Id.*].  The ALJ provided examples of when the examination of Plaintiff's cervical and lumbar spine were normal and neurological examination was within normal limits.  [*Id.*].

The ALJ next discussed the opinions of state agency consultants Dr. Wunsch and Dr. Hassinger, noting that they opined Plaintiff could lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently; sit, stand and/or walk for six hours in a workday; and could occasionally climb, balance, stoop, kneel, crouch, and crawl.

22

[*Id*.].  The ALJ accorded some weight to these opinions to the extent they are consistent with the overall medical evidence of record.  [*Id*.].

Finally, the ALJ discussed the opinions of state agency reviewing physicians Drs. Sours, Oyewo, and Moore who opined that Plaintiff could lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently; could sit, stand and/or walk for six hours in a workday; frequently climb ramps and stairs, balance, kneel, and crawl; occasionally climb ladders, ropes, and scaffolds; occasionally stoop and crouch; and would need to avoid concentrated exposure to hazards such as machinery and heights. [*Id*.].  The ALJ accorded great weight to these opinion as they are consistent with the overall medical evidence.  [*Id*.].

## IV.   STANDARD FOR DETERMINING DISABILITY

An individual is considered disabled for purposes of disability benefits if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The impairment or impairments must result from anatomical, psychological, or physiological abnormalities which are demonstrable by medically accepted clinical or laboratory diagnostic

23

techniques and must be of such severity that the claimant is not only unable to do previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The burden of proof in a Social Security disability case is divided between the claimant and the Commissioner.  The claimant bears the primary burden of establishing the existence of a "disability" and therefore entitlement to disability benefits. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a).   The Commissioner uses a five-step sequential process to determine whether the claimant has met the burden of proving disability. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a); *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). The claimant must prove at step one that he is not undertaking substantial gainful activity.  *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments that significantly limits his ability to perform basic work-related activities. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). At step three, if the impairment meets one of the listed impairments in Appendix 1 to Subpart P of Part 404 (Listing of Impairments), the claimant will be considered disabled without consideration of age,

24

education, and work experience.   *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  At step four, if the claimant is unable to prove the existence of a listed impairment, he must prove that his impairment prevents performance of past relevant work.  *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  At step five, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  The Commissioner must produce evidence that there is other work available in the national economy that the claimant has the capacity to perform. *Doughty*, 245 F.3d at 1278 n.2.  To be considered disabled, the claimant must prove an inability to perform the jobs that the Commissioner lists.  *Id*.

If at any step in the sequence a claimant can be found disabled or not disabled, the sequential evaluation ceases and further inquiry ends. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  Despite the shifting of burdens at step five, the overall burden rests on the claimant to prove that he is unable to engage in any substantial gainful activity that exists in the national economy.  *Doughty*, 245 F.3d at 1278 n.2; *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983),

AO 72A
(Rev.8/8
2)

*superceded by statute on other grounds by* 42 U.S.C. § 423(d)(5), *as recognized in Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1214 (11th Cir. 1991).

## V.     SCOPE OF JUDICIAL REVIEW

A limited scope of judicial review applies to a denial of Social Security benefits by the Commissioner.  Judicial review of the administrative decision addresses three questions:  (1) whether the proper legal standards were applied; (2) whether there was substantial evidence to support the findings of fact; and (3) whether the findings of fact resolved the crucial issues.  *Washington v. Astrue*, 558 F. Supp. 2d 1287, 1296 (N.D. Ga. 2008); *Fields v. Harris*, 498 F. Supp. 478, 488 (N.D. Ga. 1980).  This Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).  If substantial evidence supports the Commissioner's factual findings and the Commissioner applies the proper legal standards, the Commissioner's findings are conclusive.  *Lewis v. Callahan*, 125 F.3d 1436, 1439-40 (11th Cir. 1997); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987) (per curiam); *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986)  (per curiam); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

26

"Substantial evidence" means "more than a scintilla, but less than a preponderance." *Bloodsworth*, 703 F.2d at 1239.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and it must be enough to justify a refusal to direct a verdict were the case before a jury.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Hillsman*, 804 F.2d at 1180; *Bloodsworth*, 703 F.2d at 1239.  "In determining whether substantial evidence exists, [the Court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986) (per curiam).  Even where there is substantial evidence to the contrary of the ALJ's findings, the ALJ decision will not be overturned where "there is substantially supportive evidence" of the ALJ's decision.  *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991).  In contrast, review of the ALJ's application of legal principles is plenary.  *Foote v. Chater*, 67 F.3d 1553, 1558 (11th Cir. 1995); *Walker*, 826 F.2d at 999.

## VI.    DISCUSSION OF CLAIMS OF ERROR

Plaintiff raises only two issues on appeal: 1) the ALJ failed to properly weigh and consider the opinion of Plaintiff's treating physician Dr. Kessler; and 2) the ALJ failed to follow the "slight abnormality" standard in finding that Plaintiff's depression

27

is a non-severe impairment. [Doc. 10 at 1]. The Court will begin its analysis with the non-severe impairment.

### A.   Non-Severe Impairments

#### 1.   Arguments of the Parties

Plaintiff argues that the ALJ did not follow the proper standard at step two. [Doc. 10 at 18]. Plaintiff argues that there is evidence to support the claim that Plaintiff's depression has more than a minimal effect on her ability to do basic work activities. [*Id*.]. Plaintiff argues that the record reflects that Plaintiff was diagnosed with depression in 2007, and was again diagnosed and noted to have "persistent depression" in 2009. [*Id*. at 20 (citing [R331, 803])]. Plaintiff noted that she took medication for her impairments and that her medication was increased in 2009. [*Id*. (citing [R803])]. Plaintiff cited to other instances in the record in which she was diagnosed with depressive disorder and there was a change in medication in 2011 and 2012. [*Id*. at 20-21 (citing [R958, 980])]. Plaintiff also cited to her own testimony in which she testified that she cries a lot and that her crying spells happen sometimes when she is on her medication and typically lasts a day or two. [*Id*. at 21 (citing [R55-56])]. Plaintiff argues that this shows that her depression would have more than a minimal effect on her ability to perform basic work activities requiring the ALJ to find

28

this impairment to be severe.  [*Id*.].  Plaintiff then argues that the ALJ had a duty to fully develop the record which would require ordering a psychological consultative examination.  [*Id*. at 22].

In response, the Commissioner argues that the ALJ found in Plaintiff's favor at step two by finding that she had a severe impairment, which is all that step two requires; thus any error was harmless.  [Doc. 11 at 12 (citing *Heatly v. Comm'r of Soc. Sec.*, 382 Fed. Appx. 823, 824-25 (11th Cir. June 11, 2010) (per curiam))].  Nonetheless, the Commissioner argues that substantial evidence supports the ALJ's finding that Plaintiff's depression was not severe.  [*Id*. at 13].  The Commissioner argues that Plaintiff's reliance on the diagnosis of depression is insufficient to establish that the impairment caused limitations in her ability to work warranting a finding of a severe impairment.  [*Id*. at 14].  The Commissioner cited to numerous instances in the record in which it was noted that her depression was under good control with medication and she reported no symptoms of the depression or her symptoms were stable.  [*Id*. at 15 (citing [R328, 685-86, 696, 741, 806, 808, 885, 888, 918, 960])].  The Commissioner further argues that the opinions of the state agency consultants support the ALJ's finding that Plaintiff's depression was not severe as Drs. Gennett, Hughes, and Carter all found that it was not a severe impairment.  [*Id*. at 16].  To Plaintiff's argument that

29

the ALJ should have ordered a consultative examination, the Commissioner argues that the determination to obtain a consultative examination is discretionary and that the ALJ is not required to order a consultative examination so long as the record contains sufficient evidence allowing the ALJ to make an informed decision.  [*Id*. at 17 (citing cases)].

## 2.    Discussion

"[T]he finding of any severe impairment . . . is enough to satisfy step two," *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987), and "[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe," *Heatly*, 382 Fed. Appx. at 825.  As step two merely "acts as a 'screening' or 'filter' to eliminate groundless claims[,] . . . step two requires only a finding of 'at least one' severe impairment to continue to the later steps."  *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 Fed. Appx. 949, 951 (11th Cir. July 24, 2014) (per curiam).  The ALJ thus found in Plaintiff's favor at step two by determining that she had multiple severe impairments including dysphagia, obesity, status post microdisketectomy and spinal fusion at L5-S1, and tobacco dependency, and therefore proceeded with the sequential evaluation process.  [R21].  Thus, to the extent that the ALJ erred at step two by finding that Plaintiff's depression is not severe, the error is harmless.

30

As a result, reversal and remand are not mandated on this ground.[6]

## B.      Consideration of Dr. Kessler's Opinions

### 1.      Arguments of the parties

Plaintiff argues that the ALJ failed to properly weigh and consider the opinions of Plaintiff's treating physician, Dr. Kessler.  [Doc. 10 at 12].  Plaintiff argues that Dr. Kessler has been treating Plaintiff's chronic back pain for years, diagnosed Plaintiff with chronic back pain, prescribed several different types of pain medication, and noted that Plaintiff's pain interfered with her physical activities.  [*Id.* at 16].  Plaintiff argues

---

[6]      Alternatively, the Court concludes that substantial evidence supports the ALJ's determination that Plaintiff's depression is not a severe impairment.  As cited by the Commissioner and the ALJ, the record reflects that Plaintiff's depression is well controlled with medication, [R919, 960], Plaintiff has only mild limitations in the "paragraph B" criteria, [R797, 828, 869, 940], and the state agency consultants found that Plaintiff's mental impairments were non-severe, [R787, 818, 859, 930].

The Court additionally finds that the ALJ was not required to order a consultative examination.  The Commissioner is correct that the decision to order a consultative examination is discretionary.  20 C.F.R. § 404.1519a(a) ("If we cannot get the information we need from your medical sources, we *may* decide to purchase a consultative examination.") (emphasis added).  Further, Plaintiff did not argue that there was an inconsistency in the evidence that needed to be resolved or the evidence as a whole was insufficient to allow the ALJ to make a decision on her claim or any other type of situation or reason that may require a consultative examination.  *See* 20 C.F.R. § 404.1519a(b).  In fact, none of the state agency consultants indicated that there was insufficient evidence to make a determination.  [*See* R787, 818, 859, 930].  Simply failing to obtain a consultative examination is insufficient to warrant remand.

AO 72A
(Rev.8/8
2)

that the ALJ failed to specifically discuss the factors in rejecting Dr. Kessler's opinions. [*Id*. at 14, 17 (citing 20 C.F.R. §§ 404.1527(d); *Tauber v. Barnhart*, 438 F. Supp. 2d 1366 (N.D. Ga. 2006))]. Finally, Plaintiff argues that it was reversible error for the ALJ to give more weight to the opinions of the non-treating state agency consultative examiners because a treating physician's opinions are entitled more deference than non-treating physicians' opinions. [*Id*. at 17 (citing 20 C.F.R. §§ 404.1527(d))].

In response, the Commissioner argues that the ALJ properly weighed Dr. Kessler's opinions. [Doc. 11 at 4]. She first argues that *Tauber* did not hold that the ALJ must discuss every factor in the regulations, but instead the ALJ's decision was remanded because the ALJ did not discuss any factors. [Doc. 11 at 6 (citing *Tauber*, 438 F. Supp. 2d at 1377)]. The Commissioner points out that *Tauber* in fact cited Eleventh Circuit law in noting that good cause exists to discount a treating physician's opinion if the opinion is not supported by the evidence or is inconsistent with the doctor's own medical records. [*Id*.].

The Commissioner next argues that the Eleventh Circuit has recognized that the regulations do not require an ALJ to discuss each factor, but only to consider the factors. [*Id*. (citing *Lawton v. Comm'r of Soc. Sec.*, 431 Fed. Appx. 830, 833

32

(11th Cir. June 22, 2011); 20 C.F.R. §§ 404.1527(c))].  She also argues that the ALJ is only required to give "good reasons" for the giving a treating source's opinion less weight, [*id*. (citing 20 C.F.R. §§ 404.1527(c)(2))]; and contends that here the ALJ provided good reasons by finding that the opinion was not supported by Dr. Kessler's own records and was inconsistent with the other medical evidence, and that Plaintiff has not shown otherwise.  [*Id*. at 7].

Moreover, the Commissioner argues that substantial evidence supports the ALJ's determination.  [*Id*. at 8].  She submits that Dr. Kessler repeatedly noted that Plaintiff had a normal physical examination, including a normal gait, and his treatment notes contain no objective evidence to support his opinions, only Plaintiff's subjective complaints of pain.  [*Id*.].  Plaintiff cited to other evidence including a treatment note from October 2007 in which Plaintiff complained of some pain, but she had discontinued all her narcotics and was only taking over-the-counter medication.  [*Id*. at 9 (citing [R429])].  The Commissioner also points out that Cherokee treatment notes between 2007 and 2009 revealed unremarkable physical examinations and normal musculoskeletal examination.  [*Id*.].

Additionally, the Commissioner argues that the assessments of the consultative examiners and state agency consultants support the ALJ's finding.  [*Id*. at 10-11].  To

33

Plaintiff's argument that it was reversible error to give more weight to the state agency consultants than the treating physicians, the Commissioner argues that these opinions can be given more weight than the treating physician if they are supported by evidence in the record.  [*Id*. at 11].

### 2.   Discussion

The regulations govern how an ALJ will evaluate opinion evidence.  *See* 20 C.F.R. § 404.1527.  The ALJ must consider all of the following factors in deciding the weight to be given to a medical opinion:

> (1) Examining relationship.  Generally we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
>
> (2) Treatment relationship.  Generally we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. . . .
>
> (3) Supportability.  The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion.  The better an explanation a source provides for an opinion, the more weight we will give that opinion.  Furthermore, because nonexamining sources have no examining or treating relationship with you, the weight we will give their opinions will depend on the degree to which they provide supporting explanations for

34

their opinions.   We will evaluate the degree to which these opinions consider all of the pertinent evidence in your claim, including opinions of treating and other examining sources.

(4) Consistency.   Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.

(5) Specialization.   We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.

(6) Other factors.   When we consider how much weight to give to a medical opinion, we will also consider any factors you or others bring to our attention, or of which we are aware, which tend to support or contradict the opinion. . . .

20 C.F.R. § 404.1527(c).

In addition to these guidelines, the regulations provide specific guidelines for how to evaluate the opinion of a treating physician.  20 C.F.R. § 404.1527(c)(2).  The regulations provide:

If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) *is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight.  When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion.  *We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.*

AO 72A
(Rev.8/8
2)

(i) Length of the treatment relationship and the frequency of examination. Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source.

(ii) Nature and extent of the treatment relationship. Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion. We will look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories. . . . When the treating source has reasonable knowledge of your impairment(s), we will give the source's opinion more weight than we would give it if it were from a nontreating source.

20 C.F.R. § 404.1527(c)(2) (emphasis supplied).

Despite Plaintiff's arguments to the contrary, the Court finds that the ALJ provided "good reasons" for not giving controlling weight to Dr. Kessler's opinions. Specifically, the Court agrees that the opinions are not supported and are inconsistent with the evidence of record. As argued by the Commissioner, Plaintiff ignores the ALJ's clearly articulated reasons for giving less weight to the opinions: that the opinions are inconsistent with the overall medical evidence including Dr. Kessler's own treatment notes. [R28]. As examples that the opinions were inconsistent with Dr. Kessler's own treatment notes, the ALJ cited to numerous instances in the record

36

in which examinations of Plaintiff's cervical and lumbar spine were normal and neurological exams were within normal limits. [*Id.*]. Moreover, although Dr. Kessler opined that drug side effects can be expected to be severe, [R954], as observed by the ALJ, Dr. Kessler frequently noted that Plaintiff denied any medication side effects. [*See* R885, 886, 911, 913, 918, 956, 960]. The ALJ also discussed the medical evidence as a whole and noted that at the April 2009 consultative examination, Plaintiff was observed to be sitting comfortably, she got in an out of the chair and up and off the table without difficulty, she walked the hall without difficulty, she was able to walk on heels and toes, and was able to squat and rise. [R26]. The ALJ noted a lot of the same observations from the December 2010 consultative examination with Dr. Murray. [R27].

The ALJ also discussed as supportive of the RFC Dr. Murray's opinion that Plaintiff could sit for eight hours, stand and walk up to six hours and only occasionally bend, kneel, crawl, stoop and crouch. [*Id.*]. The ALJ also considered the opinions of state agency consultants of Drs. Wunsch, Hassinger, Sours, Oyewo, and Moore, which opinions supported the RFC determination that Plaintiff could perform light work. [R28]. Plaintiff does not challenge these sources' findings, except to argue that they did not have a treating relationship with Plaintiff. However, where substantial evidence

supports an ALJ's determination to accord less weight to the treating physician, the ALJ does not err by according greater weight to the opinion of a non-examining physician if such opinion is supported by substantial evidence. *See Forsyth v. Comm'r of Soc. Sec.*, 503 Fed. Appx. 892, 893 (11th Cir. Jan. 16, 2013); 20 C.F.R. § 404.1527(e); *see also Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) (recognizing that although such opinions are generally afforded less weight, reports of nonexamining reviewing physicians may be credited over the opinion of the treating physician when good cause is stated for discounting the treating physician's opinion).

Here, the Court concludes that substantial evidence supports the ALJ's determination to accord less weight to Dr. Kessler. As discussed above, substantial evidence supports the ALJ's finding that Dr. Kessler's opinion is inconsistent with the his own treatment notes and the evidence as a whole.  On the other hand, substantial evidence supported the opinions of the nontreating physicians.

Accordingly, substantial evidence supports the decision.

## VII.   CONCLUSION

For the reasons above, the Court **AFFIRMS** the final decision of the Commissioner.

The Clerk is **DIRECTED** to enter final judgment in Defendant's favor.

38

**IT IS SO ORDERED and DIRECTED,** this the 28th day of March, 2016.

_____
ALAN J. BAVERMAN
UNITED STATES MAGISTRATE JUDGE